UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIM ANH THI DOAN, | * |
| | * |
| Plaintiff-Petitioner, | * |
| | *   Civil Action No. 15-cv-11725-IT |
| v. | * |
| | * |
| SUZANNE BERGERON, et al., | * |
| | * |
| Defendants-Respondents. | * |

ORDER ON MOTION TO DISMISS PLAINTIFF'S HABEAS PETITION

August 18, 2016

TALWANI, D.J.

Kim Anh Thi Doan's First Amended Complaint [#77] asserts that she is being unlawfully detained in Immigration and Customs Enforcement ("ICE") custody. First Am. Compl., Count I. Presently before the court is Defendant Sean Gallagher's Motion to Dismiss Count One of Plaintiff's First Amended Complaint [#144]. Because the Connecticut probate court committed Doan for psychiatric treatment, Doan's habeas petition is moot, and Gallagher's motion is ALLOWED.

I.   Facts as Alleged in the Amended Complaint and Procedural Background

The relevant facts as alleged in the First Amended Complaint [#77] and the early procedural background are set forth in this court's Memorandum & Preliminary Injunction [#143].

On December 3, 2015, this court entered a Temporary Restraining Order ("TRO") which mandated that Doan be transferred to ICE's Field Office in Hartford, Connecticut by the following day for an evaluation by a physician from Connecticut Department of Mental Health

and Additional Services ("CDMHAS") to determine if Doan met the criteria for admission to the CDMHAS facility. Mem. & TRO 5 [#107]. The TRO directed counsel for Doan to provide CDMHAS and the physician from CDMHAS with a release or releases allowing CDMHAS and the physician to share the results of the evaluation of Doan, Doan's treatment records, and any anticipated step-down of treatment with counsel for Doan and with Respondent Sean Gallagher, the ICE Field Office Director for the Boston Area. Id. The TRO also required Doan's counsel to secure CDMHAS's agreement to commit Doan to its facility, to share Doan's treatment records with Gallagher and Doan's counsel, and to not release Doan from the facility without advance notice to Doan's counsel and Gallagher. Id. at 5-6. The TRO directed counsel for Doan to secure this agreement in advance of Doan's transfer to CDMHAS and ordered Gallagher to promptly inform the court in the event that he contended that a Physician's Emergency Certificate has not been provided to him or that CDMHAS had not agreed to commit Doan to its facility, to provide medical records to him, or to provide advance notice to him before releasing Doan from its facility. Id. The court directed that following the CDMHAS physician's examination and execution of a Physician's Emergency Certificate declaring that Doan meets the criteria for admission to the CDMHAS facility, and provided that Doan has secured CDMHAS's agreement as set forth above, ICE would assist in transporting Doan to the CDMHAS facility for civil commitment. Id. at 6. The TRO mandated further: that Doan shall remain at the secure, locked facility in Connecticut twenty-four hours per day and shall submit to the medical and therapeutic treatment plan prescribed by physicians at the facility pending further order of the court; that Doan shall remain under the supervision of ICE while at the CDMHAS facility; and that ICE may monitor Doan's location through the use of a GPS tracking device in its discretion and may

monitor her treatment through review of her treatment records. Id.

On December 4, 2015, CDMHAS evaluated Doan and initially committed her by means of a Physician's Emergency Certificate. Pet'r's Opp'n Mot. Dismiss Count One Ex. B [#162-1] (under seal). Thereafter, CDMHAS instituted civil commitment proceedings in Connecticut probate court.

On December 31, 2015, the court entered a Preliminary Injunction. Mem. & Prelim. Inj. Order [#143]. The preliminary injunction mandated that Doan remain in a locked facility run by CDMHAS for involuntary civil commitment and mental health treatment targeted towards restoring Doan to mental competence pending resolution of the instant case or further order of the court. Id. at 17. The injunction further mandated the same conditions as set forth in the TRO: that Doan shall remain at the secure, locked facility in Connecticut twenty-four hours per day and shall submit to the medical and therapeutic treatment plan prescribed by physicians at the facility pending further order of the court; that Doan shall remain under the supervision of ICE while at the CDMHAS facility; and that ICE may monitor Doan's location through the use of a GPS tracking device in its discretion and may monitor her treatment through review of her treatment records. Id. Finally, the injunction ordered that Doan be returned to ICE's custody should CDMHAS refuse or fail to commit or continue to commit Doan to its facility, to share Doan's treatment records with Gallagher and Doan's counsel, and to agree to not release Doan from the facility without advance notice to Doan's counsel and Gallagher. Id.[1]

On January 12, 2016, the Connecticut probate court issued an order involuntarily

---

[1] Gallagher was entitled to appeal the court's order to the First Circuit Court of Appeals, but he did not. See 28 U.S.C. §1292(a)(1) (vesting in appeals court jurisdiction to review orders of a district court granting an injunction).

committing Doan for psychiatric treatment, finding "by clear and convincing evidence that Ms. Doan is gravely disabled and has psychiatric and intellectual disabilities." Pet'r's Notice Regarding Jan. 12, 2016 Order Conn. Probate Ct., Ex. A (probate court order) [#166-1]. The probate court ordered that Doan "be committed to Capitol Region Mental Health Center or other suitable hospital for the treatment of psychiatric disabilities until [she] is discharged in due course of law." Id.

The First Amended Complaint [#77] requests that Doan be ordered "released to CDMHAS at the earliest possible opportunity on such terms and conditions as the Court deems just." First Am. Compl. Request Relief B.

II.   Discussion

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies'." Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016) (quoting U.S. Const., Art. III, § 2). This requires an "actual case or controversy . . . between the parties throughout the course of litigation." N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 73 (1st Cir. 2006).

Gallagher argues in his opening brief that Doan's habeas petition became moot once she was released from ICE custody on account of this court's TRO and Preliminary Injunction. Doan argues that Gallagher's compliance with a preliminary injunction does not moot the habeas petition, given ICE's apparent willingness to take Doan back into custody should the preliminary injunction be dissolved. See Pl.'s Mem. Opp. Mot. Dismiss Count I 3 [#162] (under seal). Doan may be correct on this point, see, e.g., Magill v. Lynch, 560 F.2d 22, 25 n.2 (1st Cir. 1977) (in political retaliation case, injunction, as an order "standing between the plaintiffs and punishment

4

. . . has a continuing effect and saves the case from mootness"), but the court does not need to reach that question.

The habeas petition became moot once Doan was involuntarily committed. At that point, Doan was no longer in ICE's custody as required by 28 U.S.C. § 2241. Before the involuntary commitment order, Doan was in the custody of CDMHAS only pursuant to this court's Preliminary Injunction [#143]. Notably, that injunction was preliminary and conditional, as it specified that Doan should be returned to the custody of ICE "should CDMHAS refuse or fail to commit . . . Doan to its facility." Mem. & Prelim. Inj. Order 17 [#143]. Now, under the involuntary commitment order, Doan is "committed to Capitol Region Mental Health Center or other suitable hospital for the treatment of psychiatric disabilities until [she] is discharged in due course of law." Pet'r's Notice Regarding Jan. 12, 2016 Order Conn. Probate Ct., Ex. A (probate court order) [#166-1]. Doan is therefore in the custody of the State of Connecticut and not the United States. For that reason, this court has no jurisdiction to grant Doan the writ of habeas corpus. See 28 U.S.C. § 2241(c)(1) (stating that the writ of habeas corpus "shall not extend to a prisoner" unless he or she is "in custody under or by color of the authority of the United States" or falls into other categories that do not apply here).

Doan contends that her habeas petition is not moot. First, she argues that her release to CDMHAS did not provide her with all of the relief she was requesting. She argues that she has asked for and not received a bond hearing in this court, to be followed by a final order and judgment releasing her on conditions for the duration of her immigration proceedings. Indeed, to establish mootness, "the party raising it must show that the court cannot grant any 'effectual relief whatever' to its opponent." N.H. Motor, 448 F.3d at 73 (quoting Church of Scientology of

Cal. v. United States, 506 U.S. 9, 12 (1992)). Doan asked, however, that she be "released to CDMHAS at the earliest possible opportunity on such terms and conditions as the Court deems just." Am. Compl. Request for Relief B-C. The court has granted her this relief. Doan also asks for "an injunction prohibiting Defendants from further violation of [her] rights," but such relief is not a remedy for the habeas portion of this case. Id. Request for Relief D. Doan has received the habeas relief that she has requested.

Next, she argues that ICE has not suggested that it would refrain from taking Doan back to detention if the preliminary injunction were dissolved. Recent events, Doan argues, in fact suggest that ICE would take her into custody should that occur. See Pl.'s Mem. Opp. Mot. Dismiss Count I 12-13 [#162] (under seal) (noting that ICE was prepared to take Doan back into custody should the probate court deny the application for Doan's involuntary commitment). This may have been true before Doan was involuntarily committed, but is now no longer true. Gallagher and ICE represent to this court that their interest is in "ensuring that CDMHAS continues her involuntary civil commitment," and would only redetain her if Doan is restored to mental competency to "ensure her appearance at her removal proceedings to effectuate her removal from the U.S." Def.'s Reply 5 [#165]. Taking this representation as true, it is "not imminent and inevitable" that ICE would immediately take Doan into custody again. See Gonzalez-Fuentes v. Molina, 607 F.3d 864, 874 n.8 (1st Cir. 2010) (stating that a "future restraint on liberty may provide a basis for habeas jurisdiction [only] if it is imminent and inevitable" and that custody is not imminent and inevitable if it "depend[s] on 'contingencies' which may 'render the entire controversy academic.'" (quoting Fernos-Lopez v. Figarella Lopez, 929 F.2d 20, 24 (1st Cir. 1991)).

Even if ICE were to redetain Doan, she would be entitled to protections against any further unreasonably prolonged detention arising from the absence of medical treatment geared towards restoring competency. If she were detained pursuant to a final order of removal under 8 U.S.C. § 1231, she could seek relief under Zadvydas v. Davis, 533 U.S. 678 (2001). If she were detained pursuant to 8 U.S.C. § 1226(c), as previously, she would be entitled to an individualized bond hearing under Reid v. Donelan, 819 F.3d 486, 496 (1st Cir. 2016) (holding that 8 U.S.C. § 1226(c), statute authorizing mandatory detention of certain criminally convicted aliens, is subject to implicit reasonableness limitation). Doan's continued prolonged detention is not inevitable, and in the absence of her custody with ICE, the court cannot maintain jurisdiction over Doan's habeas claim.

III.     Conclusion

For the foregoing reasons, Defendant Sean Gallagher's Motion to Dismiss Count One of Plaintiff's First Amended Complaint [#144] is ALLOWED. Count I of Doan's First Amended Complaint [#77] is DISMISSED.

IT IS SO ORDERED.

August 18, 2016                              /s/ Indira Talwani
                                             United States District Judge