UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KIM ANH THI DOAN, | * | |
| | * | |
| Plaintiff-Petitioner, | * | |
| | * | Civil Action No. 15-cv-11725-IT |
| v. | * | |
| | * | |
| SUZANNE BERGERON, et al., | * | |
| | * | |
| Defendants-Respondents. | * | |

MEMORANDUM & ORDER

September 23, 2016

TALWANI, D.J.

        Kim Anh Thi Doan was detained by Immigration and Customs Enforcement ("ICE") and

held at the Bristol County House of Correction, under the stewardship of the Bristol County

Sheriff's Office. Her First Amended Complaint [#77] alleges that the mental health care she

received while detained was constitutionally inadequate, and that the defendants involuntarily

medicated Doan and failed to protect her from involuntary medication and inadequate treatment.[1]

        The defendants have all moved to dismiss the complaint. For the reasons set forth herein,

Thomas M. Hodgson's and Judith Borges' Motion to Dismiss Plaintiff's First Amended

Complaint [#79] is ALLOWED IN PART and DENIED IN PART, Bristol County's Motion to

Dismiss or in the Alternative for Judgment on the Pleadings [#120] is ALLOWED, and Sean

Gallagher's Motion to Dismiss Plaintiff's First Amended Complaint [#132] motion is

ALLOWED IN PART and DENIED IN PART.

---

[1]The First Amended Complaint also included a habeas corpus count alleging that Doan was
being unlawfully detained. Doan is no longer in ICE custody and the court dismissed this count
as moot. Order Mot. Dismiss Pl.'s Habeas Pet. [#198].

## I.     Facts as Alleged in the Amended Complaint

### a. Background

Doan was born in Vietnam in 1971. First Am. Compl. ¶ 24. She came to the United States as a lawful permanent resident on September 5, 1995. Id. ¶ 25. In 1998, she was charged in Connecticut with murder. Id., Ex. A at 1. After a number of medical evaluations, Doan was found to "'suffer[] from various mental disorders' and [to have] committed the offense while suffering from resultant 'extreme emotional distress.'" Id., Ex. A at 2. Connecticut downgraded the charge from murder to first degree manslaughter, and in 2001 she was found competent to enter a plea of *nolo contendere* to this charge. Id., Ex. A at 2. Doan was sentenced to seventeen years in prison. Id. ¶ 42; Ex. A at 2.

### b. ICE's Notice to Appear and Subsequent Detention of Doan

On January 31, 2013, ICE served Doan with a Notice to Appear, which charged her with removability based on her conviction for an aggravated felony, crime of violence, and crime of moral turpitude for which the term of imprisonment was at least one year. Id., Ex. A at 2.

On January 8, 2014, when Doan completed her criminal sentence in Connecticut, she was transferred to ICE custody. Id. ¶ 44. Doan remained in ICE custody for approximately 22 months, first with the Bristol County House of Correction until October 20, 2015 and then with the Strafford County Department of Corrections in New Hampshire. Notice Transfer [#72].[2]

### c. The Arrangement for Detention and Medical Services for Immigration Detainees

In September of 2007, ICE entered into an Intergovernmental Service Agreement with

---

[2] On December 4, 2015, pursuant to the court's Temporary Restraining Order and Preliminary Injunction, Doan was transferred to the custody of the Connecticut Department of Mental Health and Additional Services ("CDMHAS"). Mem. & TRO [#107] & Mem. & Prelim. Inj. Order [#143].

the Bristol County Sheriff's Office, whereby the Bristol County Sheriff's Office agreed to provide detention and on-site medical services for immigration detainees held by ICE. <u>See</u> First Am. Compl. ¶ 132; Ex. F.

On December 6, 2009, Bristol County, with signatories from both the Bristol County Sheriff's Office and the Bristol County Commissioners, entered into a contract with Correctional Psychiatric Services ("CPS") for CPS to provide medical services to inmates and detainees held by the Bristol County Sheriff's Office. <u>Id.</u> ¶¶ 15, 141; Ex. H. The agreement, in its preamble, stated that the Sheriff's office had "an obligation to provide necessary comprehensive medical services to . . . detentioners . . . of the County of Bristol's correctional institutions." <u>Id.</u>, Ex. H. at 1.

The agreement authorized the Bristol County Sheriff's Office to conduct performance audits of CPS, monitor CPS employee licensure, and generally set "rules and regulations" governing CPS's conduct. <u>Id.</u>, Ex. H. at 3, 6. The original contract was for a term expiring in 2012. <u>Id.</u>, Ex. H. The contract authorized the Bristol County Sheriff's Office to extend the agreement for one-year terms, <u>id.</u>, and both parties agree that the contract has been extended each year.

### d. Doan's Medical Care

Doan alleges that she still suffers from severe mental illness and disabling intellectual deficits, <u>see, e.g.</u>, First Am. Compl. ¶¶ 164-170, and that while in ICE custody at the Bristol County House of Correction, she received constitutionally inadequate psychiatric care at the hands of CPS. <u>Id.</u> ¶ 207. Specifically, Doan alleges that CPS administered to Doan two psychiatric medications, Haldol and Cogentin, even though Doan was incapable of providing informed consent to receive psychiatric medications and no court has authorized the

administration of medications to Doan involuntarily. Id. ¶¶ 171, 173-74, 177-78, 181. Doan

further alleges that CPS failed to independently assess whether Haldol and Cogentin were

appropriate for Doan's specific condition and failed to provide any other treatment to Doan, such

as individual and group therapy. Id. ¶¶ 175, 188.

Hodgson, as Sheriff for Bristol County, was responsible for the operation of the Bristol

County House of Correction. First Am. Compl. ¶¶ 11. Doan alleges that Hodgson was aware of

Doan's severe mental illness and cognitive impairments. Id. ¶ 206. Further, Doan alleges that

Hodgson acted with "deliberate indifference" to the conditions of Doan's confinement and

"failed to take steps to protect her from the serious harm for which she [was] at risk." Id. ¶¶ 213,

214, 229, 230.

Borges, as the Director of Medical Services for the Bristol County Sheriff's Office, was

responsible for the Bristol County House of Correction's medical and psychiatric care. Id. ¶ 14.

She had the "ultimate decision-making authority with regard to [Doan's] medical treatment"

while Doan was detained. Id. Doan alleges that Borges was aware of Doan's severe mental

illness and cognitive impairments and that Borges acted with "deliberate indifference" to the

conditions of Doan's confinement and "failed to take steps to protect her from the serious harm

for which she [was] at risk." Id. ¶ 230. Doan also alleges that Borges affirmatively denied

requests for additional care. Specifically, in January 2015, Borges responded to a request from an

attorney at Prisoners' Legal Services for a psychiatric examination. Id. ¶¶ 122-24; Ex. D, E.

Borges did not permit this psychiatric examination, explaining that a request for a psychiatric

examination must be submitted to and approved by ICE. Id., Ex. E. In the response, Borges

further stated that the "onsite mental health department" at the Bristol County House of

Correction was "solely responsible for treatment, care, and all clinical decisions regarding those

in our custody." Id. ¶ 125; Ex. E.

Sean Gallagher is the Director of the Field Office for ICE's Boston Area. Doan alleges that Gallagher was "aware of the conditions of [Doan's] confinement, her lack of adequate medical care, and the administration of antipsychotic medication without her informed consent or a court order." First. Am. Compl. ¶ 189. Gallagher allegedly had the authority to reconsider the conditions of Doan's custody by releasing Doan to a psychiatric facility to ensure that she received adequate care, but he refused to do so despite being aware of Doan's inadequate treatment. Id. ¶¶ 82, 190.

II.   Discussion

a. Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In resolving such a motion, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The court, however, need not accept the plaintiff's legal conclusions as true. Id. "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

b. Bristol County

Doan brings a claim under 42 U.S.C. §1983 for failure to train and supervise, and inadequate screening against Bristol County. First Am. Compl. Count VI.[3] Bristol County moves to dismiss Count VI on various grounds. One is persuasive—that the obligations of the Bristol

---

[3] Doan voluntarily dismissed without prejudice Count X against Bristol County. Notice Dismissal Count X [#152].

County Sheriff's Office and those of Bristol County related to the Sheriff's Office's functions were transferred to the Commonwealth of Massachusetts.

Under Chapter 61 of the Acts of 2009, the "offices of the . . . Bristol . . . county sheriff[ was] transferred to the [C]ommonwealth" of Massachusetts, effective January 1, 2010. St. 2009 ch. 61, §§ 3, 26. The Act further determined that all "functions, duties and responsibilities of the office of a transferred sheriff . . . including, but not limited to, the operation and management of the county jail and house of correction . . . are hereby transferred from the county to the Commonwealth." Id. § 4. The Act also provided that "all . . . contracts of the office of a transferred sheriff" and "all valid liabilities . . . of the office of a transferred sheriff" "shall be obligations of the [C]ommonwealth." Id. §§ 6, 9. By the Act, Bristol County argues, at the time Doan was housed in the Bristol County House of Correction (2014-2015), Bristol County no longer had responsibility for the obligations and contracts of the Bristol County Sheriff's Office.

Doan argues that only the contracts with the Sheriff's Office were transferred, and that the contract enlisting the services of CPS at the Bristol County House of Correction was explicitly between CPS and *Bristol County*. This argument is unavailing. As the contract itself shows, the signatures of the Bristol County Commissioners were pro forma; the responsibilities of monitoring CPS lay with the Bristol County Sheriff's Office, see, e.g., First. Am. Compl. Ex. H at 1, 3, 6 [#77-8], as the Bristol County Sheriff's Office was responsible for administering the medical treatment provided at the Bristol County House of Correction. The monitoring of CPS was thus one such "responsibilit[y] of the office of" the Sheriff of Bristol County that was transferred to the state. St. 2009 ch. 61, § 4 (specifically noting that responsibility of the operation of the house of correction was transferred to the state).

6

The failure to train and supervise Count against Bristol County must be dismissed.

      *c.   Borges and Hodgson*

Doan brings the following counts against Defendants Hodgson and Borges: a claim under 42 U.S.C § 1983 for failure to provide adequate medical care (Count II); a claim under 42 U.S.C. § 1983 for involuntary medication (Count III); a claim under 42 U.S.C. §1983 for failure to protect (Count IV); and a claim under the Massachusetts Declaration of Rights (Count VII).

Borges and Hodges move to dismiss the counts against them on the ground that Doan failed to state a claim for deliberate indifference. This argument fails. Doan has adequately pled Hodgson's and Borges' deliberate indifference.[4]

Immigration detainees' constitutional claims status is akin to that of pretrial detainees. See, e.g., Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000). "Pretrial detainees are protected under the . . . Due Process Clause rather than the Eight Amendment; however, the standard to be applied is the same as that used in Eight Amendment cases." Burrell v. Hampshire Cty., 307 F.3d 1, 7 (1st Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 545 (1979)). Under the Eight Amendment standard, a detainee must prove that defendants' withholding of "essential health care . . . amounted to 'deliberate indifference to a serious medical need.'" DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Mere "substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment" is "insufficient to prove a constitutional

---

[4] Doan argues that the "deliberate indifference" standard is irrelevant for Count III, involuntary medication. See Washington v. Harper, 494 U.S. 210, 229 (1990) ("The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty."); Riggins v. Nevada, 504 U.S. 127, 133-137 (1992) (applying Harper to pretrial detainee context and discussing the "liberty interest in freedom from unwanted antipsychotic drugs"). Since the court is not dismissing the claims against Borges and Hodgson for failure to plead "deliberate indifference," the court does not reach this issue.

violation." Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007). Instead, deliberate

indifference may be established "by decisions about medical care made recklessly with 'actual

knowledge of impending harm, easily preventable.'" Id. (quoting Feeney v. Corr. Med. Servs.,

Inc., 464 F.3d 158, 162 (1st Cir. 2006)).

Doan has alleged such "actual knowledge" of harm to her sufficient to show deliberate

indifference. Ruiz-Rosa, 548 F.3d at 156. She states that both Borges and Hodgson were aware

that Doan was being involuntarily medicated and given inadequate medical care, that they could

have ameliorated the alleged constitutional violations, but that they failed to. See First Am.

Compl. ¶¶ 11, 14, 122-124, 207, 213, 223-224, 230.

Borges argues that Doan has failed to plead a claim against her because Doan fails to

allege that Borges directed, obstructed, or otherwise denied Doan medical care, and that the mere

allegation that Borges was told about Doan's medical care is insufficient. Doan, however, alleges

more. Doan asserts that Doan did not take action based on Doan's request for a psychiatric

evaluation. See First Am. Compl. ¶ 124. Doan alleges further that Borges, who had the "ultimate

decision-making authority with regard to [Doan's] medical treatment," see id. ¶ 14, was told

about the inadequacies of Doan's treatment and refused to take any action to remedy the

treatment. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (prisoner official can be found

liable where the "official knows of and disregards an excessive risk to inmate health or safety").

Borges' apparent delegation of medical care duties to CPS is immaterial at this stage, as Doan

alleges (and the contract between the Sheriff's Office and CPS shows) that Borges still had

ultimate authority to influence Doan's medical treatment—for example, through monitoring of

CPS. Borges' reliance on Newbrough v. Piedmont Regional Jail Authority, 822 F. Supp. 2d 558

(E.D. Va. 2011), is misplaced. In Newbrough, the court held that the plaintiff failed to plead

deliberate indifference against a jail superintendent because the plaintiff did not sufficiently allege that the superintendent—an official with no medical training—knew that the plaintiff's medical condition was serious, when he was told only that the plaintiff was experiencing back pain and hypertension. Id. at 581. Here, Doan alleges that Borges was made aware in detail about the seriousness of Doan's medical condition and the inadequacy of Doan's treatment. See First Am. Compl. ¶ 123. Doan has sufficiently pled deliberate indifference against Borges.

Hodgson argues that Doan has made only conclusory allegations as to Hodgson's involvement, and that there are no allegations that Hodgson obstructed, directed, or otherwise denied Doan's medical care. But, Doan does allege that Hodgson was made aware about Doan's serious medical condition, and that Hodgson did nothing to alleviate that even though Hodgson was ultimately responsible for all of the operations of the Bristol County House of Correction, where Doan was held. Id. ¶ 11, 230.

Hodgson's reliance on Sanchez v. Pereira-Castillo, 590 F.3d 31, 49-50 (1st Cir. 2009), is misplaced. In that case, the First Circuit affirmed the dismissal of a deliberate indifference claim against a prison superintendent and other high-level prison officials because the plaintiff brought forth only bald legal conclusions against those defendants. There, the plaintiff alleged only that those defendants were deliberately indifferent just because they had responsibility "for ensuring that the correctional officers under their command followed practices and procedures [that] would respect the rights and ensure the bodily integrity of Plaintiff" and failed to do so. Id. at 49. Here, however, Doan alleges not just Hodgson's responsibility for assuring Doan's adequate medical care, but also that he *knew* about Doan's condition and the absence of adequate care and did nothing to remedy that.

Borges and Hodgson move in the alternative to dismiss damages claims against them in

their official capacities on Eleventh Amendment immunity grounds. They argue that Doan cannot maintain such claims against them because they are now employees of the Commonwealth of Massachusetts, and are therefore immune from suit in their official capacities.

The Eleventh Amendment of the United States Constitution is recognized as a bar to suits in federal courts against a state, its departments, and its agencies, unless the state has consented to suit or Congress has overridden the state's immunity. See Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984). A suit against a state official in his or her official capacity is "in fact a suit against a State." Pennhurst, 465 U.S. at 102. Suits against a state or state officials in their official capacities for damages are barred. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985).

As recounted above, Chapter 61 of the Acts of 2009 transferred the "office[] of the . . . Bristol . . . county sheriff[] . . . to the [C]ommonwealth" of Massachusetts and stated that all functions and responsibilities of the Sheriff's Office were transferred to the Commonwealth of Massachusetts. Id. §§ 3, 4. The Act further provided that "all employees of the office of a transferred sheriff [were] transferred to that transferred sheriff as employees of the [C]ommonwealth." Id. § 3. Because of such language, it "is well established that 'modern Massachusetts Sheriff's Departments [are] arms of the state entitled to sovereign immunity.'" Latimore v. Suffolk Cty. House of Corr., No. 14-13378-MBB, 2015 WL 7737327, at *4 (D. Mass. Dec. 1, 2015) (quoting Gallo v. Essex Cty. Sheriff's Dep't, No. 10-10260-DPW, 2011 WL 1155385, at *3 (D. Mass. Mar. 24, 2011)). Thus, "[d]espite its municipal title," the Bristol County Sheriff's Office "is controlled directly by the Commonwealth of Massachusetts and all employees . . . are employees of the Commonwealth." Id. (quoting Greene v. Cabral, No.12-

11685-DPW, 2015 WL 4270173, at *3 (D. Mass. July 13, 2015)).[5] Accordingly, the Bristol

County Sheriff's Office is a state agency, and Hodgson and Borges are state officials, entitled to

the sovereign immunity that the Commonwealth of Massachusetts enjoys.[6]

Doan argues that, under Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto

Rico & Caribbean Cardiovascular Center Corp., 322 F.3d 56, 68 (1st Cir. 2003), the Bristol

County Sheriff's Office is not an "arm of the state" entitled to share in the Commonwealth's

sovereign immunity.  Fresenius describes three types of *separate entities* where courts have used

the "arm of the state" analysis: political subdivisions (for example, cities or counties), entities

established by two or more states by compact and approved by Congress, and special purpose

public corporations established at the behest of the state. Id. at 61. Here, however, the Bristol

County Sheriff's Office is not a "separate entity."

But, even if the Fresenius analysis applies, the Bristol County Sheriff's Office would still

be an "arm of the state." The First Circuit's "arm of the state" analysis focuses as a threshold

issue on "whether the state has indicated an intention—either explicitly by statute or implicitly

---

[5] To be sure, the cited cases holding that Massachusetts Sheriff's Offices are state agencies arise
in the context of counties that have been fully abolished. Bristol has not been abolished.
Nevertheless, Chapter 61 of the Acts of 2009 transferring the Bristol County Sheriff's Office to
the Commonwealth was no less explicit than acts abolishing counties in stating that the functions
of the Sheriff's Office were given over to the state. Compare St. 2009 ch. 61 § 4 (All "functions,
duties and responsibilities of the office of a transferred sheriff . . . including, but not limited to,
the operation and management of the county jail and house of correction . . . are hereby
transferred form the county to the [C]ommonwealth.") with Mass. Gen. Laws. ch. 34B
(abolished county's "functions, duties and responsibilities . . . including, but not limited to, the
operation and management of the county jail and house of corrections . . . [are] transferred . . . to
the [C]ommonwealth."). That Bristol County is not an abolished county does not change the
analysis about whether the Commonwealth intended the Bristol County Sheriff's Office to be a
state agency.

[6] Because the Bristol County Sheriff's Office is a state agency and not an agency of Bristol
County, that counties are not entitled to sovereign immunity, see Jinks v. Richland Cty., S.C.,
538 U.S. 456, 466 (2003), is immaterial.

by structure of the entity—that the entity share the state's sovereign immunity." <u>Irizarry-Mora v. Univ. of P.R.</u>, 647 F.3d 9, 12 (1st Cir. 2011) (quoting <u>Redondo Constr. Corp. v. P.R. Highway & Trans. Auth.</u>, 357 F.3d 124, 126 (1st Cir. 2004)). Here, through Chapter 61 of the Acts of 2009, the Commonwealth of Massachusetts has explicitly intended that the Bristol County Sheriff's Office Share in the Commonwealth's sovereign immunity.[7]

Accordingly, the claims against Hodgson and Borges in their official capacities must be dismissed, but the claims against them for damages in their individual capacities remain.[8]

   d.   *Gallagher*

Doan brings two counts against Defendant Gallagher in his individual capacity: Count V—a claim under <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971), for failure to provide adequate medical care, failure to protect, and involuntary medication; and Count VII—a claim under the Massachusetts Declaration of Rights.[9]

---

[7] Doan argues that the language in Chapter 61 of the Acts of 2009 § 13(f) stating that an "existing right or remedy of any character shall not be lost by this act" requires the court to find that the Commonwealth could not have been expanding its sovereign immunity to cover the Bristol County Sheriff's Office. A waiver of immunity is given effect, however, "only where stated by the most express language or by such overwhelming implication from the text" as will "leave no room for any other reasonable construction." <u>Port Auth. Trans-Hudson Corp. v. Feeney</u>, 495 U.S. 299, 305 (1990). Here, the Act includes no express waiver of sovereign immunity and the language can reasonably be construed to apply to rights that could be claimed at the time of the transfer, such as a claim against the County for actions taken before duties were transferred to the Commonwealth on January 1, 2010.

[8] Hodgson and Borges also move to dismiss on the ground that Doan's complaint failed to allege that a guardian or representative has been designated to bring a suit on Doan's behalf. <u>See</u> Fed. R. Civ. P. 17. The court, however, has appointed a guardian for Doan. Order [#12].

[9] Any claims against Gallagher in his official capacity for injunctive relief are moot because Doan is no longer in his custody. <u>See</u> <u>Ford v. Bender</u>, 768 F.3d 15, 29 (1st Cir. 2014) (holding that plaintiff's release from custody mooted her claims for relief). Accordingly, to the extent that any claims are pled against Gallagher in his official capacity for injunctive relief, they are dismissed—albeit without prejudice to Doan's refiling those claims should she be returned to Gallagher's custody). Any claims against Gallagher for damages in his official capacity are dismissed based on the United States' sovereign immunity. <u>See</u> <u>Kozera v. Spirito</u>, 723 F.2d

Gallagher moves to dismiss Count V on two grounds; first, that he is protected by qualified immunity, and second, that Doan failed to state a <u>Bivens</u> claim against him. The allegations against Gallagher are scant but sufficient at this stage.

A qualified immunity analysis is two-fold: the court must first decide whether the facts, taken in light most favorable to the plaintiff, "make out a violation of a constitutional right," and then decide "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009). The second step of the analysis involves considering "both whether the contours of the constitutional right were sufficiently clear at the time of the alleged conduct and also whether, under the particular facts of the case, a reasonable officer would have understood that his behavior violated that clearly established right." <u>Sanchez</u>, 590 F.3d at 52-53.

As to the first part of the analysis, Doan may allege a violation of her constitutional rights by showing that Gallagher exhibited "deliberate indifference" to her "serious medical needs." <u>Estelle</u>, 429 U.S. at 104. Deliberate indifference "defines a narrow band of conduct in this setting." <u>Feeney</u>, 464 F.3d at 162. The medical care provided must have been "so inadequate as to shock the conscience." <u>Id.</u> (quoting <u>Torraco v. Maloney</u>, 923 F.2d 231, 235 (1st Cir. 1991)). Mere substandard treatment, "even to the point of malpractice," mere "disagreement on the appropriate course of treatment[,]" and inadvertent failure to provide medical care do not qualify as deliberate indifference. <u>Id.</u> (quoting <u>Layne v. Vinzant</u>, 657 F.2d 468, 474 (1st Cir. 1981) and <u>Ferranti v. Moran</u>, 618 F.2d 888, 891 (1st Cir. 1980)).

Doan has made a sufficient allegation. She alleges that Gallagher knew that CPS defendants and the Bristol County Sheriff's Office defendants—to whom he had entrusted the

---

1003, 1007 (1st Cir. 1983).

care of detainees such as Doan—were violating Doan's right to be free from involuntary medication, exhibiting deliberate indifference to Doan's serious mental health needs, and were failing to protect Doan. First Am. Compl. ¶¶ 189-90. The complaint further alleges that, despite Gallagher's knowledge of these constitutional violations, he failed to reconsider Doan's custody arrangements even though he had the authority to do so. Id. ¶ 82. Taking these facts as true, Gallagher's "inaction" may amount "to a reckless or callous indifference" to Doan's constitutional rights. Gutierrez-Rodriquez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989).

Gallagher argues that he, a non-medical professional, entrusted Doan's medical care by contract (through the Bristol County Sheriff's Office) to CPS, and that CPS—which employed medically trained doctors, nurses, and counselors—made a reasoned medical judgment, to administer Haldol and Cogentin without including therapy in that treatment. Gallagher's Mem. Supp. Mot. Dismiss Pl.'s First Am. Compl. [#133] (citing First Am. Compl. ¶¶ 141, 173-175, 177, 188). Accordingly, Gallagher argues, his trusting trained medical professionals to make reasonable medical decisions cannot amount to action that "shock[s] the conscience." Feeney, 464 F.3d at 162 (quoting Torraco, 923 F.2d at 235). He also avers that Doan is merely disagreeing over CPS's course of her treatment, which in itself cannot amount to a constitutional violation. See, e.g., Sires v. Berman, 834 F.2d 9, 12 (1st Cir. 1987) (where the "dispute concerns not the absence of help, but the choice of a certain course of treatment," a court "will not second guess the doctors.").

Doan's allegations are more than a disagreement over a course of treatment. She has alleged that the CPS defendants—with Gallagher's knowledge—"sedated [Doan] with Haldol" even though she was unable to give informed consent to that treatment. First Am. Compl. ¶ 130. Gallagher's knowledge of and failure to remedy the administration of psychiatric medications

14

without Doan's informed consent could amount to deliberate indifference.

Gallagher then argues that, even if Doan had made out a violation of her constitutional rights, the rights were not sufficiently clear that a reasonable officer in his position would have understood that his actions violated her rights. Specifically, he states that a reasonable officer in his position would have been entitled to rely on the medical judgment of CPS.

A constitutional right is "clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if 'a general constitutional rule already identified in the decisional law applies with obvious clarity' to the specific conduct." Jennings v. Jones, 499 F.3d 2, 16 (1st Cir. 2007) (alteration omitted) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997)).

When a plaintiff seeks to hold liable a defendant based on his supervisory role over others who allegedly violated the plaintiff's constitutional rights,

> the 'clearly established' prong of the qualified immunity inquiry is satisfied when (1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context. In other words, for a supervisor to be liable there must be a bifurcated 'clearly established' inquiry—one branch probing the underlying violation, and the other probing the supervisor's potential liability.

Camilo-Robles v. Hoyos, 151 F.3d 1, 16 (1st Cir. 1998).

As to the first step of the "clearly established" inquiry, the violations of Gallagher's subordinates—CPS and the Bristol County Sheriff's Office defendants—were violations of clearly established constitutional rights.

Doan's right to be free from involuntary medication—implicated by the allegations that CPS defendants gave Doan Haldol even though she was incapable of giving informed consent and they did not have a court order to do so, First. Am. Compl. ¶ 178—was clearly established,

15

as the Supreme Court has stated that prisoners "possess[] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." <u>Washington v. Harper</u>, 494 U.S. 210, 221 (1990). Doan's right to be free from harm—implicated by Gallagher's failure to protect Doan from the involuntary medication of Haldol—was also clearly established in Supreme Court case law. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (a constitutional violation of failure to prevent harm if defendant knows that inmate faces substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it).

As to the second step of the analysis, it was clearly established that a supervisor would be liable for the violations of his subordinates in this context, where Gallagher was alleged to have known about the constitutional violations. A supervisor can be liable for the actions of his subordinates if he or she "is on notice" to "ongoing violations" and "fails to take corrective action." <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 582 (1st Cir. 1994); <u>see also</u> <u>Miranda v. Munoz</u>, 770 F.2d 255 (1st Cir. 1985) (acknowledging that officials responsible for overseeing provision of medical care in prison can be liable for subordinate's failure to provide adequate medical care). Here, Doan has alleged that Gallagher was aware of the ongoing constitutional violations that she was suffering, had the power to alleviate those violations by relocating Doan, but failed to take corrective action.

Gallagher relies on cases from other circuits holding that non-medical jail or prison officials such as Gallagher are entitled to rely on the expertise of medical personnel. <u>See</u> <u>Arnett v. Webster</u>, 658 F.3d 742, 755 (7th Cir. 2011) (stating that "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004) (same). However, "non-medical officials can be chargeable with . . . deliberate indifference where they

have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Arnett, 658 F.3d at 755. This is what Doan alleges; that Gallagher knew that CPS was involuntarily medicating Doan and failed to take any corrective action.

Accordingly, Gallagher is not entitled to qualified immunity at this stage of the litigation.

Gallagher also argues that Doan has failed to make a cognizable claim against him under Bivens. Specifically, he states that Doan is making out a vicarious liability argument, which is not permissible under Bivens. See Iqbal, 556 U.S. at 676; Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) (noting that vicarious liability "is not a viable theory of Bivens liability"). Doan, however, is not making such a claim. Instead, her claim is one of supervisory liability. A supervisory claim is viable as a Bivens claim, but only if liability is premised on the supervisor's "own acts or omissions." Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). With such a claim, a plaintiff must show that the supervisor's "action or inaction was 'affirmatively linked' to the constitutional violation caused by the subordinate." Ruiz Rivera, 209 F.3d at 28-29 (quoiting Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998). In other words, the supervisor's behavior must be able to be characterized as "supervisory encouragement, condonation, or acquiescence or gross negligence . . . amounting to deliberate indifference." Whitfield, 431 F.3d at 14 (internal quotation marks omitted).

Here, as Doan alleges, Gallagher knew of the unconstitutional conditions to which Doan was subjected, and though he had power to relocate Doan from the institution that was responsible for these conditions, he failed to do so, allowing the unconstitutional conditions to continue. Such facts as stated plausibly make out claim that Gallagher was deliberately indifferent to the constitutional violations against Doan by CPS.

Accordingly, at this stage, Doan has pled enough so as to survive a motion to dismiss Count V against Gallagher in his individual capacity.

Gallagher also moves to dismiss Count VII—a claim under the Massachusetts Declaration of Rights—on the ground that a federal official cannot be held liable for violations of a state constitution. The sole remedy for damages against the United States for the negligent or wrongful act of a federal employee is a claim under the Federal Tort Claims Act, except for civil actions against federal employees for a violation of (i) the United States Constitution or (ii) a federal statute which authorizes suits against individual federal employees. See 28 U.S.C. § 2679(b) ("The remedy against the United States provided by [the FTCA]…is *exclusive* of any other civil action or proceeding…by reason of the same subject matter") (emphasis added)). A claim under a state constitution such as the Massachusetts Declaration of Rights does not fall into either exception.[10]

The parties cite no cases that discuss whether a federal official may be sued in his individual capacity under the Massachusetts Declaration of Rights. Courts have held that federal officials cannot be individually liable under other states' constitutions. See Shoman v. U.S. Customs & Border Prot., C.A. No. 07-994, 2008 WL 203384, at *5 (W.D. Pa. Jan. 24, 2008) ("[W]hile [plaintiff] may pursue a Bivens action against [government employees] in their individual capacities, he may not sue these Defendants in their individual capacities for alleged violations of the Pennsylvania Constitution"); Chin v. Wilhelm, 291 F. Supp. 2d 400, 405 (D. Md. 2003) ("It does not appear, however, that a plaintiff may sue a federal officer in his

---

[10] Moreover, a claim against Gallagher in his official capacity must be dismissed because there has been no showing that the United States waived sovereign immunity as to state constitutional claims. See, e.g., United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. King, 395 U.S. 1, 4 (1969)) ("A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'").

individual capacity for alleged violations of a state constitution."); <u>Hightower v. United States</u>, 205 F. Supp. 2d 146, 148 (S.D.N.Y. 2002) ("Although the complaint indicates that plaintiff's constitutional claims purport to be brought under . . . the New York State Constitution, they are properly construed as <u>Bivens</u> claims for violations of the United States Constitution, because the defendants are all employees acting under federal law."). Accordingly, Count VII against Gallagher must be dismissed.

III.    <u>Conclusion</u>

For the reasons stated above, <u>Bristol County's Motion to Dismiss or in the Alternative for Judgment on the Pleadings</u> [#120] is ALLOWED. <u>Thomas M. Hodgson's and Judith Borges' Motion to Dismiss Plaintiff's First Amended Complaint</u> [#79] is ALLOWED IN PART and DENIED IN PART. Any damages claims against Hodgson and Borges in their official capacities are dismissed, but claims against them in their individual capacities are not dismissed. <u>Sean Gallagher's Motion to Dismiss Plaintiff's First Amended Complaint</u> [#132] is ALLOWED IN PART and DENIED IN PART. Specifically, Count VII against Gallagher in both his individual and official capacities and Count V against Gallagher in his official capacity are dismissed, but Count V against Gallagher in his individual capacity is not dismissed.

IT IS SO ORDERED.

September 23, 2016                                    /s/ Indira Talwani
                                                     United States District Judge